THERESA A. SCOTT *vs.* EDWARD J. MCQUADE, *Admr.*

JULY 12, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

FLYNN, C. J.   This action in assumpsit was brought to recover upon a claim for board, rooms and nursing care provided by the plaintiff for Bridget Gillis, defendant's intestate, during her life.  The claim was duly filed in the probate court and was there disallowed by the administrator of her estate.  Upon trial in the superior court a jury returned a verdict for the plaintiff in the amount of $1590. Thereafter the trial justice denied defendant's motion for a new trial and the case is before us on his exceptions to that and other rulings in the course of the trial.

Plaintiff's declaration is based solely upon the common counts. According to the bill of particulars her claim, as filed and disallowed in the probate court, appears as follows:

"For board, rooms, and nursing care of
Bridget Gillis, from September 15th,
1941 to September 22d, 1942........$1,855.00
Credit by cash,...................   150.00
                                   _____
          Balance due .... ..........$1,705.00"·

The evidence, apart from the records of the probate court, as presented by the clerk thereof, contains only the testimony of the plaintiff and a woman who was a tenant of the other side of her duplex house. From their testimony it appears that the defendant's intestate, for convenience hereinafter called the defendant, was a big woman about seventy years of age and was crippled by arthritis so that in moving about she had to use a cane. The plaintiff, who was about sixty-four years old, was her cousin but was not one of her heirs at law. Apparently from September 1939 to about June 1940 the defendant had lived with the plaintiff at her house, paying $6 per week for board and room; and from June 1940 to June 1941 she lived elsewhere, spending the summers in her own home at Tiogue Lake. Around Labor Day of 1941 defendant told the plaintiff that she had sold her summer home; that she had visited some convalescent homes and they wanted $25 to $35 per week, which she did not care to pay; and that she wanted to come to live with plaintiff. It was then agreed that defendant would live with the plaintiff at her home for "$5 a week for the room and the use of the kitchen". Defendant was to furnish her own meals.

Defendant accordingly came to plaintiff's house about the second week of September 1941. After a week or so under this arrangement, because of defendant's difficulty with the grocer and also the danger of her working over the gas stove, plaintiff suggested that defendant go to other relatives or to a convalescent home where she would obtain

all the services and care which she required. Defendant did not want to go elsewhere and remained with the plaintiff. About a month later the defendant again told the plaintiff that she had previously looked up convalescent homes and they wanted $25 to $35 per week; that she did not care to pay so much and did not want to be among strangers; but that if she had to pay $35 a week she would prefer to pay it to the plaintiff. There is no evidence of the nature of services rendered in convalescent homes. Plaintiff merely testified that she had agreed to accept defendant and understood that she was going to pay at that rate; and that defendant received board, lodging and care up to about three days before defendant's death on September 23, 1942. Defendant was not confined to her bed until some time in August 1942.

At the time of the alleged agreement, plaintiff did not know that the defendant had more than $6000 in a bank account and she did not pay the plaintiff at any time at the rate of $35 per week. The plaintiff, in explaining the absence of such payment, testified that in the beginning the defendant was reluctant to withdraw money until after the interest was due. After the New Year, however, the plaintiff, upon the defendant's written order, made a withdrawal of $75 from one of the latter's bank accounts, out of which she was paid only $30. The plaintiff testified that the defendant stated: "I know I owe you a lot of money but you keep this book till you get paid"; and again that she knew she should have drawn more in order to pay her; but promised to make it up later. But on the second withdrawal of $50 from the same bank, made by the plaintiff for the defendant, the plaintiff received only $25; and on a third occasion, $75 was thus withdrawn but plaintiff received only $35, making a total of $90 in all received from the defendant as payment for services rendered under the alleged agreement.

At no time during defendant's life did plaintiff ever demand payment of $35 weekly or any specific amount that

would have been due under such an agreement. Plaintiff assumed that the defendant understood and that she would pay eventually at that rate. Apparently defendant paid all her other bills promptly. In the bill of particulars plaintiff gave credit to the defendant for cash payments of $150, but she testified that defendant paid her only $90 in all.

After the defendant's death plaintiff delivered to the administrator certain bankbooks and other property of the defendant and discussed her own claim against the estate. She did not then inform the administrator that defendant had expressly agreed to pay at the rate of $35 per week. She merely told him that she thought $1500 would not ,be too much considering what she had done and paid out for the defendant and she did not itemize her claim any further.

The trial justice, in denying from the bench the defendant's motion for a new trial, apparently inferred that the jury founded their verdict upon an acceptance of plaintiff's testimony that she had completely performed her part of a specific, oral agreement whereby the defendant had expressly promised to pay her for services at the rate of $35 per week; that she admitted failure of the verdict to correspond with the amount due under such an agreement might perhaps be the result of an error of the jury in computation; and that in any event the verdict was not a compromise and the error in computation was not prejudicial to the defendant, so as to require the granting of a new trial solely on that ground.

In our opinion the approval of the verdict by the trial justice is based on mere speculation that has no reasonable foundation in the record and therefore is not entitled to the weight ordinarily given to such a decision under our well-established rule. We find it impossible, on the law and evidence here, to reconcile the amount of the verdict with any inference that the jury based their verdict upon an acceptance of the plaintiff's testimony that the defendant specifically agreed to pay her at the rate of $35 per week. If such an agreement were found to have been made and the verdict

were based thereon, the amount thereof would necessarily have been considerably larger. The difference, in a case of this kind, is too substantial to overlook or to be attributed to some possible error in computation, which conclusion appears to be a further speculation for which we can find no reasonable basis in the evidence and verdict.

In these circumstances, therefore, we must examine the transcript of evidence and reach our conclusion thereon independently of the trial justice's decision in question. From such examination, we are of the opinion that the more natural conclusion to be drawn from a consideration of the law, the evidence, and the verdict as rendered, is that the jury did not accept the plaintiff's testimony to the extent that the defendant specifically promised to pay her at the rate of $35 per week; but that they found nevertheless that she was entitled to recover on the basis of the fair and reasonable value of the services rendered. But the difficulty there is that the plaintiff evidently tried her case on the single theory that she had completed her part of a specific agreement by which the defendant expressly promised to pay $35 per week. From our examination we are unable to find in the evidence a sufficient standard in accordance with which the jury could measure the fair and reasonable value of those services, so as to reconcile the result substantially with the amount of the verdict as rendered; nor can we, without indulging in mere guesswork or speculation, find any standard sufficiently proved in the evidence according to which we might compute the fair and reasonable value of those services in some other amount. In our opinion the only conclusion that can properly be reached, under the law and the evidence of the case as it appears, is to grant a new trial.

The defendant's exception to the denial of the motion for a new trial is sustained and the case is remitted to the superior court for a new trial.

*McKiernan, McElroy & Going, Edward F. McElroy,* for plaintiff.

*Edward J. McQuade,* for defendant.